**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____
**JESSE CLINTON BLAISDELL,**

                    **Plaintiff,**               5:15-cv-321
                                                                (GLS)
                        v.

**COMMISSIONER OF SOCIAL SECURITY,**

                    **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Law Offices of Steven R. Dolson | STEVEN R. DOLSON, ESQ. |
| 126 North Salina Street, Suite 3B | |
| Syracuse, NY 13202 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | HEETANO SHAMSOONDAR |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Jesse Clinton Blaisdell challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Blaisdell's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

### II. Background

In July 2013, Blaisdell filed an application for DIB under the Social Security Act, alleging disability since April 2, 2011. (Tr.[1] at 66, 142-48.)[2] After his application was denied, (*id.* at 83-87), Blaisdell requested a hearing before an Administrative Law Judge (ALJ), which was held on June 20, 2014, (*id.* at 27-65, 95-96). On September 3, 2014, the ALJ issued an unfavorable decision denying the requested benefits. (*Id.* at 10-26.) This became the Commissioner's final determination upon the

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 7.)

[2] Blaisdell also filed an application for Supplemental Security Income in July 2013, (Tr. at 149-59), but in his complaint, he only appeals the ALJ's decision denying DIB. (Compl. at 1.)

Appeals Council's denial of review. (*Id.* at 1-6.)

Blaisdell commenced the present action by filing his complaint on March 18, 2015 wherein he sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 6, 7.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 9, 12.)

### III. **Contentions**

Blaisdell contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 9 at 3-6.) Specifically, Blaisdell claims that the ALJ erred in: (1) applying the treating physician rule to determine his residual functional capacity (RFC); and (2) evaluating his credibility. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (Dkt. No. 12 at 6-14.)

### IV. **Facts**

The court adopts the undisputed factual recitations of the parties and the ALJ. (Dkt. No. 9 at 1-2; Dkt. No. 12 at 2; Tr. at 15-23.)

### V. **Standard of Review**

The standard for reviewing the Commissioner's final decision under

3

42 U.S.C. § 405(g) is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Evaluating Medical Opinions

Blaisdell first alleges that the ALJ erred in affording only "some weight" to the opinion of treating rheumatologist Hom Neupane. (Dkt. No. 9 at 3-4.) According to Blaisdell, this opinion is entitled to controlling weight. (*Id.* at 3.) Further, Blaisdell argues that the ALJ's RFC determination[3] is not supported by substantial evidence[4] because it fails to incorporate the limitations contained in Dr. Neupane's opinion, or those

---

[3] A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

[4] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

4

contained in the opinion of one-time consultative examiner, Kalyani Ganesh. (*Id.* at 4.)[5] The Commissioner counters, and the court agrees, that the ALJ properly evaluated the opinions of Drs. Neupane and Ganesh, and rendered an RFC determination that is supported by substantial evidence. (Dkt. No. 12 at 6-12.)

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 416.927(c). Controlling weight will be given to a treating source's opinion on the nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining what weight to assign a medical opinion: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner.

---

[5] Blaisdell does not contest the ALJ's evaluation of his mental healthcare providers or her findings with respect to his mental impairments. (*See generally* Dkt. No. 9.)

20 C.F.R. § 404.1527(c)(2)-(6). Importantly, the ALJ must provide "'good reasons' for the weight given to the treating source's opinion.'" *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted). "Nevertheless, where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision,'" it is not necessary that the ALJ "'have mentioned every item of testimony presented to h[er] or have explained why [s]he considered particular evidence unpersuasive or insufficient to lead h[er] to a conclusion of disability.'" *Id*. (citation omitted).

   1.   *Dr. Neupane*

Dr. Neupane began treating Blaisdell in January 2013 for rheumatoid arthritis and fibromyalgia. (Tr. at 397.) According to the July 2013 physical RFC questionnaire completed by Dr. Neupane, these impairments caused Blaisdell aches, pain, joint stiffness, poor sleep, and a decreased ability to do regular activities. (*Id.*) Specifically, he opined that Blaisdell could, among other things, sit for only ten minutes and stand for only ten minutes at a time, and, in total in an eight-hour work day, sit for less than two hours and stand/walk for less than two hours. (*Id.* at 399.) According to Dr. Neupane, Blaisdell needed a job that permitted shifting positions at will, and required ten-minute-long unscheduled breaks approximately every

6

thirty minutes.  (*Id.*)  Dr. Neupane also opined that Blaisdell could use his left hand, fingers, and arm for only ten percent of an eight-hour work day to twist, manipulate, and reach, and his right hand, fingers, and arm for only eighty percent of the work-day.  (*Id.* at 400.)

The ALJ considered Dr. Neupane's opinion in its entirety.  (*Id.* at 20.) She noted that he had treated Blaisdell on only three occasions prior to completing the questionnaire.  (*Id.*)  She also noted that the "extreme limitations in [Blaisdell's] functioning" indicated on the questionnaire were "inconsistent with Dr. Neupane's own treatment notes where he recommends that [Blaisdell] do more in terms of physical activity."  (*Id.*) Further, the ALJ noted that Blaisdell's admitted ability to use the computer, send text messages on his cellular telephone, and complete college courses, "undercuts Dr. Neupane's opinion regarding [Blaisdell's] restricted use of his hands."  (*Id.*)  Finally, the ALJ concluded that "the substantial medical evidence of record does not fully support [Dr. Neupane's] opinion." (*Id.*)

Based on the foregoing analysis, the ALJ afforded Dr. Neupane's opinion "only some weight."  (*Id.*)  Such analysis, which included a discussion of the length and extent of the treating relationship between Dr.

7

Neupane and Blaisdell, the evidentiary support offered for Dr. Neupane's opinion, and the consistency of his opinion with the record as a whole, clearly satisfied the ALJ's obligation under the regulations to consider the relevant factors for weighing treating physician opinions. *See Courtney v. Colvin*, No. 6:12-cv-1157, 2013 WL 5218455, at *3 (N.D.N.Y. Sept. 16, 2013) (explaining that an ALJ does not err in failing to discuss every factor under the regulations, as long as her decision makes clear that she properly applied 20 C.F.R. § 404.1527(c)); *see also* SSR 06-03p, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006) ("Not every factor for weighing opinion evidence will apply in every case."). In addition, the ALJ undertook a thorough discussion of the medical and testimonial evidence of record which suggested limitations less severe than those articulated by Dr. Neupane. (Tr. at 18-20.) Thus, contrary to Blaisdell's assertion, (Dkt. No. 9 at 3-4), the ALJ properly followed the treating physician rule and her assessment of Dr. Neupane's opinion is legally sound.

   2.   *Dr. Ganesh*

Dr. Ganesh examined Blaisdell in August 2013. (Tr. at 407-10.) Her physical examination was largely benign, although Blaisdell exhibited reduced range of motion in his lumbar spine and absent deep tendon

8

reflexes bilaterally.  (*Id.* at 409.)  Dr. Ganesh opined that Blaisdell suffered no limitation in his ability to sit, stand, or walk.  (*Id.* at 410.)  According to Dr. Ganesh, Blaisdell suffered only a "mild to moderate limitation" in his ability to lift, carry, push, and pull.  (*Id.*)  The ALJ gave this opinion "only some weight" because Dr. Ganesh was a one-time examiner and "[t]he record demonstrates that [Blaisdell] experiences pain that limits him more than the limitations opined to by Dr. Ganesh."  (*Id.* at 20.)

According to Blaisdell, because the ALJ did not adopt the opinion of either Dr. Ganesh or Dr. Neupane, the ALJ improperly substituted her opinion for that of competent medical opinion and rendered an RFC determination that is unsupported by substantial evidence.  (Dkt. No. 9 at 3-4.)  However, "while an ALJ is required to support her RFC determination with medical evidence, she is not required to adopt a physician's RFC assessment outright."  *Fancher v. Colvin*, No. 3:12-cv-1505, 2014 WL 409080, at *5 (N.D.N.Y. Feb. 3, 2014) (citing *Soto v. Astrue*, No. 08-CV-6352T, 2009 WL 1765200, at *6 (W.D.N.Y. June 22, 2009)); *see Reyes v. Astrue*, No. 3:09-CV-0285, 2010 WL 786253, at *7 (N.D.N.Y. Feb. 26, 2010) (finding no error where the ALJ did not fully adopt the RFC determination of the state agency review physician, but, instead,

9

"synthesized the findings, examined the medical records from the relevant time period, considered [the claimant's] subjective complaints, and rendered a detailed RFC determination").

Here, the ALJ concluded that, with respect to his physical impairments, Blaisdell retained the RFC to perform sedentary work, with up to moderate noise, as long as he has a sit/stand option that allows him to change position every forty minutes for up to five minutes without leaving his work station. (Tr. at 17.) Further, the ALJ determined that Blaisdell can tolerate occasional hazzards, frequently handle and finger, occasionally stoop, crouch, climb, kneel, crawl, and balance on narrow, slippery, or moving surfaces. (*Id.*) Additionally, the ALJ found that Blaisdell requires up to three short, unscheduled breaks lasting less than five minutes, in addition to his regularly scheduled breaks. (*Id.*) This RFC determination is supported by the following evidence: (1) treatment notes that evince some relief of Blaisdell's back pain after surgery, (*id.* at 298, 314); (2) recommendations from several treatment providers that Blaisdell remain or become more active, (*id.* at 255, 288-89, 306, 489); (3) the prescription of conservative treatment for his arthritis, (*id.* at 345-46); (4) minimal clinical findings on several examinations, (*id.* at 305, 409, 500, 529); and (5)

10

Blaisdell's reported activities, including doing yard work, obtaining his associates degree in accounting, and working part-time twenty to thirty hours a week, subsequent to his alleged onset date, (*id.* at 345, 570-72, 587, 599). Based on the foregoing medical and other evidence before her, it was reasonable for the ALJ to conclude that, while Blaisdell suffered from physical limitations, they were not so severe as to be disabling. Thus, the ALJ's explanation for failing to wholly adopt the overly restrictive opinion of Dr. Neupane or the far less restrictive opinion of Dr. Ganesh is supported by substantial evidence, and, in applying the appropriate legal standards to evaluate these medical opinions, the ALJ arrived at an RFC determination that is supported by substantial evidence. *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."); *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d. Cir. 2013) ("[W]hether there is substantial evidence supporting the appellant's view is not the question," instead, the court must "decide whether substantial evidence supports *the ALJ's decision.*").

**B.    Credibility**

Blaisdell also argues that the ALJ legally erred in making her

credibility determination. (Dkt. No. 9 at 4-6.) In particular, Blaisdell contends that the ALJ failed to properly engage in the two-step process of evaluating credibility when she "failed to specify which symptoms [his] impairments could or could not be expected to cause" and "failed to provide a specific discussion of [his] credibility or lack thereof." (*Id.* at 5-6.) According to Blaisdell, these failures prevent meaningful review of the ALJ's decision. (*Id.* at 6.) The court disagrees.

Blaisdell is correct that, in analyzing credibility, the ALJ must first determine whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); SSR 96-7p, 61 Fed. Reg. 34,483, 34,484-85 (July 2, 1996). Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. *See* 20 C.F.R. § 404.1529(c); SSR 96-7p, 61 Fed. Reg. at 34,485. Because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," SSR 96-7p, 61 Fed. Reg. at 34,485, an ALJ will consider the factors listed

12

in 20 C.F.R. § 404.1529(c)(3)(i)-(vii)[6] in making her credibility determination. Notably, "[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that [s]he considered the entire evidentiary record." *Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) (internal quotation marks and citation omitted); *see Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *22 (E.D.N.Y. Aug. 14, 2012) (stating that the 20 C.F.R. § 404.1529(c)(3) factors are included as "'examples of alternative evidence that may be useful [to the credibility inquiry], and not as a rigid, seven-step prerequisite to the ALJ's finding'" (quoting *Snyder v. Barnhart*, 323 F. Supp. 2d 542, 546 (S.D.N.Y. 2004))).

Here, the ALJ determined that Blaisdell's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" but were "not totally disabling" and only required the restrictions contained in her RFC determination. (Tr. at 19.) The ALJ then went on to

---

[6] The listed factors are: (i) claimant's daily activities; (ii) location, duration, frequency, and intensity of claimant's symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (v) other treatment received to relieve symptoms; (vi) any measures taken by the claimant to relieve symptoms; and (vii) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

13

explain that the medical evidence did not fully support Blaisdell's allegations[7] because it revealed that he experienced some relief from treatment, was encouraged by his treatment providers to remain active, and was able to walk, perform yard work, climb stairs, and reach above his head. (*Id.* at 19-20, 255, 288-89, 298, 314, 306, 345, 489, 531.) The ALJ added that Blaisdell's "many activities establish a greater capacity than alleged." (*Id.* at 21.) Specifically, the ALJ noted that his ability to "use the computer, text on his phone, and complete college courses" undercuts his allegations that he cannot use his hands, and his search for part-time work in the accounting field is inconsistent with his alleged anxiety around people with whom he is not familiar. (*Id.* at 18, 20.) Indeed, the record supports the ALJ's foregoing conclusions. Blaisdell testified that he was able to attend college courses full-time, beginning one month after his alleged onset date, and obtained an associates degree in accounting with a 3.4 grade point average. (*Id.* at 586-88.) He also testified that he worked part-time as a tax preparer while completing his course work. (*Id.* at 570-72, 597-99.) Further, he testified that he can lift twenty pounds,

---

[7] The ALJ noted Blaisdell's allegations that he has difficulty standing, sitting, walking, climbing stairs, kneeling, reaching overhead, using his hands, and concentrating, and isolates himself from others. (Tr. at 18, 213-16, 593, 601.)

type on the computer, and send text messages, (*id.* at 585, 586), and is looking for part-time work in the accounting field, (*id.* at 588, 592). Finally, Blaisdell testified that, along with other family, he helps care for his late niece's three-month old twins. (*Id.* at 579-80.)

Ultimately, the ALJ explicitly acknowledged consideration of the 20 C.F.R. § 404.1529 factors, (*id.* at 18), and it is evident from her thorough discussion that her credibility determination was legally sound. *See Britt v. Astrue*, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96-7p as evidence that the ALJ used the proper legal standard in assessing the claimant's credibility). Moreover, the ALJ's conclusion that Blaisdell's subjective complaints were not credible to the extent that they suggested impairment greater than the ability to perform less than the full range of sedentary work contemplated in the ALJ's RFC determination, (Tr. at 17-18), is supported by substantial evidence.

## C.   Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Blaisdell's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 28, 2016
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
U.S. District Judge